TOWNSHIP OF NEPTUNE, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION, PLAINTIFF, v. EDWARD C. SWEET AND AMERICAN SURETY COMPANY OF NEW YORK, A CORPORATION, DEFENDANTS.

Decided April 29, 1932.

For the motion, *Cook & Stout* (*Mr. O'Hagan,* of counsel).

Opposed, *William J. Blair,* for the defendant Edward C. Sweet.

Opposed, *Harold McDermott,* for the defendant American Surety Company of New York.

LAWRENCE, S. C. C. This is a suit brought by the plaintiff against the defendant Sweet, who was collector of taxes of the township from January 1st, 1929, to January 1st, 1931, to recover alleged shortages in his accounts aggregating $13,564.63, with interest. The other defendant was surety on the bonds given by him as such official, covering the years 1929 and 1930, each of which was in the penal sum of $15,000. Its answer admits that it was the surety on the bonds in question, but in other respects adopts the defenses set up by its principal, or at least predicates such answer thereon. The answer of defendant Sweet contains a general denial of the shortages alleged in the complaint and that any moneys are due from him to the township. Motion is now made to strike the answer as sham, on affidavits submitted in behalf of plaintiff which recite in circumstantial detail the items taken from the books of the defendant and kept by him as tax collector covering the periods stated and aggregating the sum sought to be recovered. In his answering affidavit he admits that he was elected and qualified for the years 1928, 1929 and 1930, and served as alleged in the complaint; also that he furnished the official bonds to which reference is made. He further asserts that during the time that a number of the alleged defalcations took place he was away from his office in the township; that he suffered a nervous breakdown for many months during the latter part of 1929 and the early part of 1930, and when he went away from the office his accounts were in proper shape; that vari-

ous changes were made in his books (by whom he does not state) without his authority and that he knows that a large sum of money in excess of $7,000 was in the safe in the township office at the time he was forced to take a leave of absence on account of his condition.

His affidavit further states that the amount of cash left in the safe, which was not credited to him in any way, together with an additional sum of $6,000, the receipt for which is in the hands of his attorney, fully accounts for the shortage alleged in the complaint. He was examined, by order of the court, under the rule providing therefor before trial, and the examination was submitted on the argument of the present motion as a deposition in behalf of plaintiff, and the cash book, and other records kept by him as tax collector, offered in evidence at such examination, were likewise produced.

In this examination, his explanation of the abstraction of the sum of $6,000 from tax moneys in his custody is unusual and would tend to indicate that he had no clear conception of his legal duty as a tax collector. He states that in July, 1929, he either turned over to, or there was taken by, a former assessor of the township (now deceased) $6,000, for which the latter gave him a receipt. He alleges that it had something to do with a tax reduction on an assessment made against property of the Ocean Grove Camp Meeting Association, a taxpayer of the township, but by what authority or legal sanction does not appear, while no suggestion is made by him that the governing body of the township participated in the transaction, took any formal action regarding it, or even had any knowledge of it. His explanation sufficiently discloses its irregularity.

Nowhere in his answer, affidavit or examination does he show that he holds receipts of the township treasurer, or other authorized person, for tax moneys collected by him and paid to such official in compliance with the provision of the act entitled, "An act for the assessment and collection of taxes" (Rev. 1918), *Pamph. L.* 1918, *ch.* 236, *p.* 873, as amended, *Pamph. L.* 1921, *p.* 97, and *Pamph. L.* 1924, *p.* 475; 2 *Cum. Supp. Comp. Stat., p.* 3501, particularly for the moneys

sought to be recovered in the present suit, while his admission that he left a sum in excess of $7,000 in the township safe, without paying it to the township treasurer and taking his receipt, and allowed $6,000 of tax moneys to be taken by an unauthorized person, together with his apparent failure to explain the shortages charged against him, as disclosed by his books and records, when the opportunity was presented during the course of his examination, indicate that he has no valid defense, notwithstanding his formal denial of liability in his answer.

The provision of the Tax act (*supra*), that it shall be the duty of the collector, or other officer having custody of collection of taxes, on the first day of each month, or oftener if required by the governing body of the municipality, to report his collections to the governing body of the municipality, and to pay the amount collected to the treasurer or other official of the municipality authorized to receive the same is mandatory. This it is clear defendant Sweet did not do, and since he admits having received sums sufficient to cover the shortages in question, without complying with the provision of the statute invoked, it follows that his answer must be regarded as sham.

The condition of each of the bonds involved in the present suit is that "if the said Edward C. Sweet shall faithfully perform all the duties imposed upon him as collector of taxes in and for the township of Neptune, county of Monmouth, during the term for which he was elected as aforesaid, then the above obligation to be void, otherwise to be and remain in full force and virtue." In *McEachron et al.* v. *Township of New Providence,* 35 *N. J. L.* 528, it was said that taxes collected (by virtue of a cited statute) are held by the township collector precisely as he holds any other tax money which he has collected or received, subject to the same duty and the same liability. "This duty is the unconditional payment of the money collected to the person and at the time directed by the act, and for its performance the collector and his sureties became bound, just as they would have been bound if that particular duty had been specified in the condition of

the official bond. Their liability results from, and must be measured by, their contract, and this being in effect an absolute covenant that the collector will pay over the money collected, it is no defense to an action brought to enforce this covenant, that the money, after having been collected, was stolen from the collector, without any negligence, want of due care, or other blame or fault whatever, on his part." This same case, in the court below (33 *N. J. L.* 339, 341), carries the quotation from *United States* v. *Prescott et al.,* 3 *How.* 578: "Public policy, says the court, requires that the depository of the public money should be held to a strict accountability, not only that he should exercise the highest degree of vigilance, but that he should 'keep safely' the moneys which come to his hands. Any relaxation of this condition would open a door to frauds which might be practiced with impunity. A depository would have nothing more to do than to lay his plans and arrange his proof, so as to establish his loss, without laches on his part."

The motion to strike the answers filed in the present suit will be granted. Application for the entry of summary judgment, however, should be made to a Supreme Court justice in accordance with the practice. *Milberg* v. *Keuthe,* 98 *N. J. L.* 779; 121 *Atl. Rep.* 713; *National Surety Co.* v. *Mulligan,* 105 *N. J. L.* 336; 146 *Atl. Rep.* 372.